UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRECISION WIRE FORMS, INC.

    Plaintiff,

v.

LINCOLN ELECTRIC AUTOMATION, INC.,

    Defendant.
_____/

Case No. 1:23-cv-415

Hon. Hala Y. Jarbou

## **OPINION**

Precision Wire Forms, Inc. ("Precision") brought this contract action against Lincoln Electric Automation, Inc. ("Lincoln Electric"). On October 26, 2023, the Court granted Lincoln Electric's motion to transfer venue to the Northern District of Ohio, the forum specified in the applicable contract's forum selection clause (ECF No. 45). The Court also directed Lincoln Electric to submit a reasonable formulation of the costs and fees associated with its motion to transfer venue as a sanction for Precision's litigation conduct. Before the Court is Lincoln Electric's motion for attorney fees (ECF No. 46).

The motion to transfer hinged entirely on the forum selection clause. That clause was included in the contract's terms and conditions, attached as the last two pages of Lincoln Electric's offer. But Precision maintained for months that it never received the last two pages of the offer. Precision filed this action on April 22, 2023. It attached to its complaint the contract, exclusive of the last two pages. (Contract, ECF No. 1-1.) Shortly thereafter, Lincoln Electric alerted Precision to this apparent mistake via email and provided notice of their intent to seek transfer. (5/19/2023 Email, ECF No. 46-2.)

Lincoln Electric then filed its motion to transfer on May 31, 2023. (Def.'s Mot. to Transfer, ECF No. 13.) Attached to this motion was the original offer, inclusive of the last two pages containing the forum selection clause. (Offer, ECF No. 13-2.) Also attached was a declaration from Robert Brewer averring that,

> The Offer attached to the Complaint as Exhibit A is not true and accurate because it is not complete. In particular, it does not contain the final two pages that expressly incorporate Lincoln Electric's terms and conditions into the offer. Every offer that I transmitted to Precision contained these pages and therein incorporated Lincoln Electric's terms and conditions.

(Brewer Decl. ¶ 5, ECF No. 13-1.) Undeterred, Precision continued to insist that the contract "consisted of only those pages Precision attached to its Complaint in this matter." (Pl.'s Resp. to Mot. to Transfer 2, ECF No. 17.) It filed a competing affidavit from Precision C.E.O. Herman Beuter declaring the same. (Beuter Decl. ¶ 4, ECF No. 17-2.)

Precision's response prompted Lincoln Electric to seek leave from this court to file a reply, (ECF No. 18), which this Court granted (ECF No. 19). Lincoln Electric's reply focused on the disputed pages of the contract and attached additional evidentiary support for its position. (Def.'s Reply to Resp. to Mot. to Transfer, ECF No. 20.) Lincoln Electric also attempted to provide to the Court a "native" electronic copy of the original email containing the offer.[1]

The Court determined that a hearing was necessary to resolve the dispute. (10/25/2023 Notice of Mot. Hr'g, ECF No. 37.) In connection with that hearing, Lincoln Electric requested an order requiring Precision to produce a native copy of the email and to present the testimony of Beuter, whom it served with a subpoena (ECF No. 39). The Court granted that motion and directed Precision to be prepared to produce a native copy of the email (ECF No. 40).

---

[1] Due to software limitations of Microsoft Outlook, the Court's email platform, the Court was unable to discern whether the attachment included in Lincoln Electric's forwarded email (i.e. the "native" copy) was original or whether it was replaced. These limitations significantly complicated the underlying evidentiary dispute.

2

On October 25, 2023, the day before the motion hearing, Precision submitted a copy of the email containing the full offer—including the forum selection clause. (1/12/2021 Email, ECF No. 41-1.) Also attached was the amended declaration of Beuter. Beuter now averred that, in response to the Lincoln Electric's motion to compel, "Precision's IT Department scrubbed the archives of our network in an attempt to locate a native copy of the January 12, 2021 email." (Am. Beuter Decl. ¶ 7, ECF No. 41.) He also averred that, "At the time I received the January 12, 2021 project proposal, I printed it out and used the hard copy for reference going forward. Upon information and belief, in my handling of the hard copy . . . pages 24 and 25 were misplaced or otherwise lost." (*Id.* ¶¶ 10-11.)

After months of representing to this Court that it never received the forum selection clause, Precision located the missing pages with ease. It did so only after an order compelling production of the email. The Court thus found it appropriate to sanction Precision by awarding Lincoln Electric the fees associated with litigating its motion to transfer.

## I. JURISDICTION

Precision argues that the Court lacks jurisdiction to sanction it now that the case has been transferred. Not so. "[T]he Supreme Court has consistently held that federal courts retain jurisdiction over issues—such as sanctions—that are collateral to the merits." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 645 (6th Cir. 2006) (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 395 (1990)). In fact, a federal court maintains jurisdiction to impose sanctions for abuses of the judicial process even where it lacks subject matter jurisdiction over the underlying controversy. *Id.* (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992)). Thus, "a court's jurisdiction to issue sanctions under 28 U.S.C. § 1927 or pursuant to a court's inherent authority is ever present." *Id.* The Court is satisfied that it maintains jurisdiction over the sanctions it ordered because of Precision's litigation conduct before the Court.

## II. ATTORNEY FEES

Lincoln Electric requests $52,665.00 in attorney fees and costs. That amount is comprised of the following: $41,480.10 in fees for its motion to transfer; $1,515.30 in costs associated with its motion to transfer; and $9,669.60 in fees for the instant motion for attorney fees.

The Court must "begin[ ] by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate.'" *Corbin v. Steak 'n Shake, Inc.*, 861 F. App'x 639, 649 (6th Cir. 2021) (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)). "The reasonable hourly rate accords with the 'prevailing market rate in the relevant community.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). A reasonable number of hours does not include "excessive, redundant, or otherwise unnecessary" hours. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Finally, "[w]here reductions to the requested number of hours reasonably expended on the litigation are appropriate, a court has the discretion to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions[.]" *Project Vote v. Blackwell*, No. 06-CV-1629, 2009 WL 917737, at *6 (N.D. Ohio Mar. 31, 2009) (citing *Alliance Int'l v. United States Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005)).

The Court can consider the following factors when determining the reasonableness of the hours and the rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (quotation marks omitted).  These factors are sometimes referred to as the *Johnson* factors, named for the Fifth Circuit's opinion in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which was cited by the Supreme Court in *Hensley*.  "[M]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate[.]"  *Murphy v. Vaive Wood Prods. Co.*, 802 F. App'x 930, 936 (6th Cir. 2020) (quoting *Hensley*, 461 U.S. at 434 n.9).  Still, some courts find it prudent to address these factors after conducting the lodestar analysis.  *See, e.g.*, *Disabled Patriots of Am., Inc. v. Rsrv. Hotel, Ltd.*, 659 F. Supp. 2d 877, 886 (N.D. Ohio 2009).  This Court finds that approach prudent here and will thus begin with the lodestar analysis before examining the *Johnson* factors.

### A. Lodestar Analysis: Hours

Lincoln Electric is represented by Hahn Loeser & Parks LLP.  Three attorneys and one paralegal worked on this matter.  Altogether, they spent 145.20 hours on the two motions—119.80 hours on the motion to transfer and 25.40 hours on the motion for attorney fees.  (Fee Schedule, ECF No. 46-4.)

Precision advances several arguments to reduce those hours.  It makes specific arguments about certain line items—for example, it argues that certain time entries lack sufficient detail—but the overall thrust of its arguments is that Lincoln Electric's hours reflect duplicative and excessive work for a relatively simple motion.  The Court agrees with Precision to a certain extent.

While it is not inherently unreasonable to staff a matter with multiple attorneys, the Court notes that this matter was staffed with three highly experienced attorneys, all of whom expended considerable time.  Robert Fogarty has 46 years of experience and was responsible for the overall litigation strategy for Lincoln Electric.  (Fogarty Decl. ¶ 10, ECF No. 46-1; Fogarty Resume, ECF No. 46-5.)  He spent 16.80 hours on these two motions.  Gregory Thompson has 11 years of

5

experience and took the lead role on these motions.  (Fogarty Decl. ¶ 4; Thompson Resume, ECF No. 46-6.)  He spent 65 hours.  Bryan Evans provided additional research and support and has 9 years of experience—the least experienced team member.  (Evans Resume, ECF No. 46-7.)  He spent 49.2 hours.  The paralegal, Nevenka Whitworth—who also has 46 years of experience—spent 14.20 hours.  (Fogarty Decl. ¶ 11.)  That is a staggering amount of fire power for a motion to transfer venue.

To be sure, Precision complicated that motion significantly by its own intransigence.  The Court is therefore unconvinced by Precision's insistence of the simplicity of the motion.  Precision's lack of due diligence and borderline misrepresentations forced Lincoln Electric, and indeed this Court, to expend significant additional time researching and crafting creative ways to prove what should have been a simple point—the existence and transmission of two critical pages.  The Court determined that an evidentiary hearing was necessary.  Thus, although Precision argues to the contrary, it was reasonable for Lincoln Electric to spend time preparing to examine Beuter about his initial, incorrect declaration.  And it was reasonable for Lincoln Electric to submit hours related to Thompson's travel to the motion hearing, an expense that could have been avoided had Precision exercised its due diligence up front.

Still, the Court finds that 120 hours for the motion to transfer and 25 hours for the motion for attorney fees are excessive.  Rather than analyzing the time detail line-by-line, the Court will apply an across-the-board cut.  *See Project Vote,* 2009 WL 917737, at *6.  The Court finds that half of the hours sought would be reasonable.  While 60 hours for a motion to transfer would still be a significant amount of time for a typical motion addressing a forum selection clause, Precision needlessly complicated matters.  The increased time is thus warranted.  Further, roughly 12.5 hours for a motion for attorney fees is reasonable.

## B. Lodestar Analysis: Rate

Plaintiffs bear the burden of proving that the hourly rates requested are reasonable. *See Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). Whether the hourly rate is reasonable is determined by reference to the prevailing rate in the relevant market—*i.e.*, "the rate that is customarily paid in the community to attorneys of reasonably comparable skill, experience, and reputation." *Project Vote*, 2009 WL 917737, at *5 (citing *Johnson v. City of Clarksville*, 256 F. App'x 782, 783 (6th Cir. 2007)). Lincoln Electric's attorneys seek the following hourly rates, inclusive of the firm's standard 10% discount: $738.00 for Fogarty, $328.50 for Thompson, and $283.50 for Evans. It also seeks $243.00 for Whitworth's paralegal services.

Lincoln Electric provides only an affidavit from Fogarty claiming that the rates sought "reasonably reflect the prevailing-market rates for attorneys and paralegals of comparable experience and expertise." (Fogarty Decl. ¶ 14.) In its response, Precision offers more concrete evidence of market rates that casts some doubt on at least some of the hourly rates sought. (2019 Ohio Attorney Rates, ECF No. 48-2.) The market rate schedule provided by Precision appears to be the most recent schedule published by the Ohio State Bar Association. To account for the slightly outdated nature of the schedule, Precision suggests the Court use the 75th percentile rates in determining appropriate rates. The Court finds it prudent to do so.

According to counsel's appearances, Hahn Loeser & Parks is located in downtown Cleveland, Ohio. 75th percentile firms in downtown Cleveland charge an hourly rate of $395. (2019 Ohio Attorney Rates.) In Ohio generally, 75th percentile attorneys with 6 to 10 years of experience charge $250 per hour, those with 11 to 15 years of experience charge $300 per hour, and those with more than 36 years of experience charge $350 per hour. (*Id.*)

For Thompson and Evans, this Court finds that hourly rates of $328.50 and $283.50, respectively, are in line with the prevailing market rates. Although both represent an increase over

7

the 75th percentile for attorneys in Ohio generally, the Court notes that law firms in downtown Cleveland charge well over the general Ohio rates. Thus, a slight increase above the general Ohio rate is reasonable.

By contrast, Fogarty's hourly rates are well outside any metric published by the Ohio State Bar Association, where the highest hourly rate is $610 for the 95th percentile of firms with more than 50 attorneys. The Court finds it more reasonable to use the $395 hourly rate for 75th percentile downtown Cleveland law firms.

Finally, the parties have not submitted a similar rate schedule for paralegal services. Although the Court could not locate significant recent case law in the Northern District of Ohio, it appears that hourly rates for paralegals in the Southern District of Ohio range from $100 to $130. *See Wallake Power Sys., LLC v. Enginer Distributors, Inc.*, No. 2:18-cv-423, 2022 WL 4298200 (S.D. Ohio Sept. 19, 2022), *aff'd*, No. 22-3399, 2023 WL 3966740 (6th Cir. June 13, 2023) (collecting cases). Whitworth's $243 hourly rate is far outside that range. Given Whitworth's extensive experience, the Court concludes the top paralegal rate of $130 per hour would be reasonable.

**C. Lodestar Analysis: Rate Calculation**

Based on the foregoing discussion and associated adjustments, the Court finds a reasonable lodestar amount to be $21,891 for both motions. This is calculated as follows:

| Professional | Hours Expended on Both Motions (halved) | Hourly Rate (adjusted) | Lodestar Amount (rounded) |
|---|---:|---:|---:|
| Fogarty | 8.40 | $395.00 | $3,318.00 |
| Thompson | 32.50 | $328.50 | $10,676.00 |
| Evans | 24.60 | $283.50 | $6,974.00 |
| Whitworth | 7.10 | $130.00 | $923.00 |
| **Total** | **72.60** | **$301.53** | **$21,891.00** |

### D. Further Adjustment: *Johnson* Factors

To reiterate, the *Johnson* factors are as follows:

(1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Isabel*, 404 F.3d at 415 (quotation marks omitted). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee" that normally encompasses "all hours reasonably expended on the litigation[.]" *Hensley*, 461 U.S. at 435; *accord Isabel*, 404 F.3d at 415, 416.

The Court concludes that no *Johnson* factor warrants a departure from the lodestar amount. Lincoln Electric's counsel was successful in securing a transfer to their preferred venue—that success, which is the most important factor, will pull against any factor that would otherwise suggest a downward adjustment. But no factor clearly weighs in Precision's favor. The motion was not particularly difficult, but it was made more difficult by Precision's actions which forced Lincoln Electric to devise novel ways to prove that the transmission of two critical pages occurred. Precision, not Lincoln Electric, imposed additional time due to the circumstances of the evidentiary dispute. The other factors are either neutral or the Court does not have sufficient information to evaluate (e.g., the nature and length of the professional relationship and awards in similar cases).

In considering the *Johnson* factors, the Court concludes that no further adjustment is necessary and that $21,891 is a reasonable fee.

9

**E. Costs**

Lincoln Electric also seeks $1,515.30 in costs. Those costs are as follows: $480 in court membership dues for the Western District of Michigan; $295 for a subpoena and witness fee to prepare for the motion hearing; $185 for the service of Herman Beuter; $339.95 in travel expenses for the motion hearing; and $215.35 in fees for the motion hearing transcript. The Court concludes that all of these costs are reasonable except for the $480 in court membership dues. The Western District of Michigan was Precision's first choice of forum. Precision is not being sanctioned for that choice. Lincoln Electric could have hired local counsel to handle the motion to transfer or its attorneys could have staffed the matter with someone with the appropriate court credentials. As such, Lincoln Electric cannot recover the court membership dues. That leaves its reasonable costs at $1,035.30.

## CONCLUSION

Based on the foregoing, this Court will grant Lincoln Electric's motion and order Precision to pay Lincoln Electric's reasonable attorney fees of $21,891.00 and its reasonable costs of $1,035.30 for a total sanction of $22,926.30.

Dated: May 13, 2024         /s/ Hala Y. Jarbou
                            HALA Y. JARBOU
                            CHIEF UNITED STATES DISTRICT JUDGE